FILED
2006 Jan-26  AM 10:11
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| LATIKA McCRARY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 5:04-CV-2668-VEH |
| JACOBS ENGINEERING GROUP | ) | |
| a/k/a JACOBS SVERDRUP, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

_____This matter is before the Court on Defendant Jacobs Engineering Group a/k/a Jacobs Sverdrup (hereinafter "Jacobs") June 17, 2005, motion for summary judgment (doc. #17) as to Plaintiff Latika McCrary's (hereinafter "McCrary") claims. McCrary commenced this action on September 3, 2004, by filing a complaint in this Court alleging separate and individual violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C §§ 2000(e). [Complaint ¶ 16]. McCrary, an African-American, contends that Jacobs's alleged conduct constitutes and/or resulted in (1) disparate treatment regarding promotions, (2) retaliation, (3) exposure to a hostile work environment and (4) conditions which eventually led to McCrary's constructive discharge. [Complaint ¶¶ 7, 8, 10, 23].

On June 17, 2005, Jacobs submitted a brief and evidence[1] in support of its motion for summary judgement. On July 1, 2005, McCrary filed a brief in opposition to Jacobs's motion for summary judgement.  On July 8, 2005, Jacobs filed a brief in reply to McCrary's response in opposition.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000).  The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323.  Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions of file, designate specific facts showing that there is a genuine issue

---

[1] Jacobs submitted the following evidence: deposition of Latika McCrary; deposition and affidavit of Robert Argraves, Jr.; deposition of Angela Huffman; deposition of Essie Guyton; affidavit of Gerald Burnett; affidavit of Cindy Daniel

for trial. *Id*. at 324.

The substantive law will identify which facts are material and which are irrelevant. *Chapman*, 229 F.3d at 1023; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *Chapman*, 229 F.3d at 1023; *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *Chapman*, 229 F.3d at 1023. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. *See Fitzpatrick*, 2 F.3d at 1115-17 (citing *United States v. Four Parcels of Real Property*, 941 F.2d 1428 (11th Cir. 1991)(en banc)). If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial. *Fitzpatrick*, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative

3

evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial. Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial. The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to affirmatively show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question. This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the non-moving party's case. *Fitzpatrick*, 2 F.3d at 1115-16. If the movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. However,

when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts. *Lewis v. Casey*, 518 U.S. 343, 358 (1996) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992)).

## **FACTS**[2]

From May 2002 until September 9, 2002, McCrary worked as a temporary employee for Jacobs. [DX 7].  On September 9, 2002, Jacobs hired McCrary  as a full-time employee at an hourly rate of $9.135. [DX 7].   McCrary provided administrative support to the General Manager, Ron Nyberg, and the Deputy General Manager, Gerald Burnett. [Burnett Aff. ¶ 4, 7].  On December 30, 2002, Ron Nyberg was reassigned to another location and Gerald Burnett became the new General Manager. [Burnett Aff. ¶ 8].  In September of 2002, Facilities Services Officer Cindy Daniels attempted to assign an administrative task to McCrary which was not originally assigned to McCrary by another superior. [McCrary Depo. at 64-67]. McCrary complained to management about the incident. [Pl. Br. 4].  On February 4, 2003, Gerald Burnett gave McCrary a Performance Improvement Action Plan or "PIP."[3] [Pl. Br. at 5, Def. Br. at 3].  The "PIP" addressed McCrary's disciplinary

---

[2] Where facts are disputed, the Court, as it must, has viewed the facts in the light most favorable to McCrary, the non-movant. *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000).

[3] A Performance Improvement Action Plan is a document which gives an employee written notification of performance problems and provides the employee with an opportunity to

issues which included: (1) an Excel spreadsheet which had many errors, (2) improper coordination of off-site luncheons, (3) the lack of a consistent "can-do" attitude - specifically the event with Facilities Security Officer Cindy Daniels and complaints to co-workers about a new office configuration, (4) attendance and (5) productivity, i.e. playing computer solitaire during work hours. [DX 13 at 1, 2]. As a result of this "PIP," McCrary was placed on a one month probationary period, during which her activities would be closely monitored. [DX 13 at 3].

McCrary's job was later eliminated by Gerald Burnett so she applied for, and received, a position as a receptionist. [Pl. Br. at 6]. McCrary's performance improved during her probationary period and, after her move to receptionist, Gerald Burnett approved an increase in McCrary's hourly rate from $9.135 to $9.50 to take effect on March 24, 2003. [Def. Br. at 5; DX 7]. After her move to receptionist, McCrary became upset when Julie Williams was moved to a data entry position in October 2002. [McCrary Depo. at 133]. McCrary felt as if she were more experienced and thought she deserved the position. [Complaint ¶ 9]. In early June of 2003, Angela Huffman, the Assistant Human Resources Manager, transferred to another position. [Burnett Aff. ¶ 19]. After her departure, the Human Resources Manager, Bobby Argraves, created a new position to assist within the Human Resources department;

---

address deficiencies in performance before formal disciplinary action is taken. [Def. Br. at 4].

this new position was called "HR Generalist." [Argraves Aff. ¶ 16]. The duties which were to be assigned to the HR Generalist were less than those which would have been assigned to the previous Assistant Human Resources Manager. [Argraves Aff. ¶¶ 15-17]. The HR Generalist would also receive a lower salary than the old HR Assistant Manager. [Argraves Aff. ¶ 17]. During this time period, there were two employees assigned to the Word Processor II job class, Star Williams and Essie Guyton. Gerald Burnett determined that only one of these positions was needed to run the department effectively, so he eliminated the position belonging to Star Williams. [Burnett Aff. ¶ 20]. Star Williams has a Bachelor of Arts in Human Resources Management and a Bachelor of Science in Psychology. [Argraves Aff. ¶¶ 10, 18]. Star Williams was given the HR Generalist position effective June 9, 2003. [Argraves Aff. ¶¶ 18-19]. Jacobs has a policy which requires non-exclusive jobs to be posted at least five days before filling the position. [Argraves Depo. at 73, 74]. Jacobs did not post the HR Generalist Position which was awarded to Star Williams. [Argraves Depo. at 70-74]. Jacobs contends that the elimination of the HR Assistant Manager position, the elimination of Star Williams's Word Processor II position, and the creation of the new HR Generalist position, constituted a "reorganization" or "reduction in work force"

which fell within an exception to the posting requirement under its current policy.[4]
[Burnett Aff. at 22].   There is no documentation in the record concerning a
"reorganization" or "reduction in work force." [Argraves Depo. at 76-79].

After the announcement of this job placement, McCrary filed her initial EEOC
complaint on September 22, 2003. [Complaint Ex. 1].   After filing her EEOC
complaint, Bill Savoie, an engineer at Jacobs, asked McCrary "Do you know you're
still in slavery?" [McCrary Depo. at 175, Def. Br. at 10]. McCrary did not report this
comment to Human Resources, but another employee did report the incident.
[Argraves Depo. at 66, 67].   Bill Savoie had supervisory authority while employed
at Jacobs, but he did not have input into decisions made regarding McCrary's
employment. [Burnett Aff. ¶ 27].   HR manager Bobby Argraves also made a comment
in which he greeted McCrary by stating "What's up, trouble?" sometime after
McCrary filed her initial EEOC complaint. [McCrary Depo at 167; Argraves Depo.
at 62, 63]. At one time, McCrary also overheard Gerald Burnett refer to the only
African-American employee at the Tullahoma office as the "Token." [McCrary Depo.
at 219].   McCrary filed her second EEOC complaint in December of 2003; the new
complaint included the comments made by Bobby Argraves and Bill Savoie which

---

[4] Jacobs's policy states: "Jacobs Sverdrup non-exclusive openings are posted except: (b)
Reassignment of an employee necessitated by a reorganization or reduction in force." [Argraves
Depo. Ex. 4].

McCrary found to be retaliatory and discriminatory, respectively. [McCrary Depo. at 154, 204, 205].

On December 22, 2003, McCrary applied for and received a position as Key Operator II; as a result of this move McCrary's pay was increased to an hourly rate of $11.16. [Argraves Aff. ¶ 22]. McCrary resigned her position with Jacobs in April 2004. [McCrary Depo. at 239].

## ANALYSIS

McCrary's complaint alleges the following race based Title VII violations: (1) disparate treatment in promotions; (2) retaliation; (3) constructive discharge; and (4) exposure to a hostile work environment. [Complaint ¶¶ 7, 8, 10, 23].

The analysis of the plaintiff's claims will be determined not only by the nature of the allegations but also by the quality of the evidence offered in support of those claims. *See Standard*, 161 F.3d at 1330 (noting that "[t]he analytical framework and burden of production var[y] depending on the method of proof chosen"). In general, a plaintiff may attempt to establish a claim of illegal employment discrimination through the use of direct evidence, circumstantial (indirect) evidence, or statistics. *See Id.*; *see also Schoenfeld v. Babbitt*, 168 F.3d 1257, 1266 (11th Cir. 1999) (recognizing the availability of either direct or circumstantial evidence). A plaintiff's ability to proceed through the use of circumstantial evidence of discrimination is

necessarily important because direct proof of discrimination is uncommon.  *See Combs v. Plantation Patterns*, 106 F.3d 1519, 1537 (11th Cir. 1997); *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 595 (11th Cir. 1987).  Direct evidence is "[s]uch evidence [which], if believed, proves the existence of a fact in issue without inference or presumption." *Burns v. Gadsden State Community College*, 908 F.2d 1512 (11th Cir. 1990).  *Cf. Wright v. Southland Corp.*, 187 F.3d 1287, 1293-94 (11th Cir. 1999) (per Tjoflat, J.) (defining direct evidence as "evidence from which a reasonable trier of fact could find, more probably than not, a causal link between an adverse employment action and a protected personal characteristic" and finding the outcomes reflected in prior case law consistent with that definition).

    In the instant case, McCrary has presented circumstantial evidence of racial discrimination.  "In evaluating [discrimination] claims supported by circumstantial evidence, [the courts of this circuit] use the now-familiar framework established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)." *Combs*, 106 F.3d at 1527.  Under the *McDonnell Douglas* and *Burdine* framework, the plaintiff first has the burden of establishing a prima facie case of discrimination, which creates a rebuttable presumption that the employer acted illegally.  *See id.* at

1527-28. The methods of presenting a prima facie case, as well as the exact elements of the case, are not fixed; rather, they are flexible and depend to a large degree upon the facts of the particular situation. *See, e.g., Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1185 (11th Cir. 1984); *Lincoln v. Board of Regents of Univ. Sys.*, 697 F.2d 928, 937 (11th Cir. 1983). In general, a plaintiff establishes a prima facie case of disparate treatment employment discrimination by showing that he or she was a qualified member of a protected class and was subjected to an adverse employment action but that otherwise similarly situated employees outside the plaintiff's class were treated dissimilarly.[5] *See McDonnell Douglas*, 411 U.S. at 802 (hiring); *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997) (discipline); *see also Nix*, 738 F.2d at 1185 (discipline); *Pittman v. Hattiesburg Mun. Separate Sch. Dist.*, 644 F.2d 1071, 1074 (5th Cir. 1981) (wages).

Once the plaintiff has shown a prima facie case and thereby has created the presumption of discrimination, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions.[6] *See Combs*, 106

---

[5] *See also McDonnell Douglas*, 411 U.S. at 802 n.13 (observing that "[t]he facts necessary will vary in Title VII cases, and the specification above of the prima facie proof required from respondent is not applicable in every respect in different factual situations").

[6] *See Chapman*, 229 F.3d at 1034 (stating that "[a] subjective reason is a legally sufficient, legitimate, nondiscriminatory reason if the defendant articulates a clear and reasonably specific factual basis upon which it based its subjective opinion").

F.3d at 1528.  The employer "need not persuade the court that it was actually motivated by the proffered reasons." *Burdine*, 450 U.S. at 254-55; *see Chapman*, 229 F.3d at 1024.  If the employer satisfies that burden by articulating one or more such reasons, then the presumption of discrimination drops out of the case and the burden of production again shifts to the plaintiff to offer evidence sufficient for a reasonable jury to conclude that the employer's supposedly legitimate reason is merely a pretext for illegal discrimination.[7]  Where the defendant articulates multiple reasonable, legitimate, and nondiscriminatory reasons, the plaintiff must rebut each of defendant's proffered reasons.  *See Chapman*, 229 F.3d at 1024-25. Although the prima facie case is irrelevant once the employer has offered a legitimate reason for its actions, the evidence of pretext may include the same evidence offered to establish the prima facie case.  *See Combs*, 106 F.3d at 1528.

Despite this shifting of the burden of production between the plaintiff and the defendant under the *McDonnell Douglas* and *Burdine* framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine*, 450 U.S. at 253. Given that the ultimate burden of persuasion always lies with the employee, a

---

[7]If the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it head on and rebut it.  Simply quarreling with that reason is not sufficient.  *Chapman*, 229 F.3d at 1030.

plaintiff may prevail on an employment discrimination claim and may also defeat a summary judgment motion either by proving that intentional discrimination did indeed motivate the defendant or by producing sufficient evidence to allow a rational trier of fact to disbelieve the employer's proffered legitimate reasons, thus permitting but not compelling the trier of fact to make a finding of illegal discrimination. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146-49, 120 S. Ct. 2097, 2108-09 (2000) (pointing out that the production of the necessary sufficient evidence by plaintiff will not always prevent the employer from prevailing on a Rule 50 motion and suggesting that the strength of plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other properly considered evidence that supports the employer's case are among other factors to take into account in evaluating a Rule 50 motion)[8]; *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993); *Abel v. Dubberly*, 210 F.3d 1334, 1339 (11th Cir. 2000); *Alexander v. Fulton County*, 207 F.3d 1303, 1336 (11th Cir. 2000); *Combs*, 106 F.3d at 1529-38 (interpreting *Hicks* and the post-*Hicks* case law); *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 920-21 (11th Cir. 1993).

### I. Discrimination in Promotions.

---

[8]The court in *Chapman* modified the statement in *Combs* contrary to this holding in *Reeves* after noting that the standard for granting summary judgment mirrors the standard for judgment as a matter of law. *See Chapman*, 229 F.3d at 1025, n.11.

A plaintiff alleging a Title VII discrimination in promotion claim must establish the following elements: (1) that [she] is a member of a protected minority; (2) that [she] was qualified and applied for the promotion; (3) that [she] was rejected despite these qualifications; and (4) that other equally or less qualified employees who are not members of the protected minority were promoted. *Lee v. GTE Florida, Inc.*, 226 F.3d 1249 (11th Cir. 2000)(citing *Taylor v. Runyon*, 175 F.3d 861, 866 (11th Cir. 1999)); *Alexander v. Fulton Co.*, 207 F.3d 1303, 1339 (11th Cir. 2000).  Once an employee has established a prima facie case, the burden shifts to the employer to articulate some legitimate nondiscriminatory reason for the employee's rejection. *Id*. In a failure to promote case based on race, a plaintiff cannot prove pretext by simply showing that [she] was better qualified than the individual who received the position [she] wanted; a Plaintiff must show not merely that the defendant's employment decisions were mistaken, but that they were in fact motivated by race. *Lee*, 226 F.3d at 1253 (citing *Alexander v. Fulton Co.*, 207 F.3d 1303 (11th Cir. 2000).

McCrary alleges that she was discriminated against because of her race as a result of Jacobs's failure to promote and/or notify her of two positions: (1)  a promotion to data entry clerk which was given to Julie Williams instead of McCrary and; (2) the newly created HR Generalist position which was not posted for a competitive application process and was awarded to Star Williams. The court will

address each promotion individually.

### a. Data Entry Clerk Position Awarded to Julie Williams

McCrary alleges discrimination in promotion in that Julie Williams, a Caucasian female receptionist with less seniority than McCrary, and without a college degree, was promoted to a data entry position in January of 2003. [Complaint ¶ 9]. Alabama is a non-deferral jurisdiction.  In such jurisdictions, Title VII requires the filing of an administrative charge with the EEOC within one hundred and eighty days after the occurrence of an alleged unlawful employment practice. *See* 42 U.S.C. § 2000e-5(e)(1).  Generally, "a claim is time-barred if it is not filed within these time limits." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 108 (2002). McCrary filed her first charge with the EEOC on September 19, 2003. [PX 1].  Julie Williams's promotion was effective February 24, 2003. [Burnett Aff. ¶ 17].   Because Julie Williams's promotion occurred approximately two hundred and seventeen days before the filing of McCrary's EEOC charge, the claim is due to be dismissed as untimely.  Accordingly, Jacobs is entitled to summary judgment as to this claim.

### b. HR Generalist Position Awarded to Star Williams

As an initial matter, the Court recognizes that "[f]or purposes of summary judgment only, Defendant concedes that [the] plaintiff has presented sufficient evidence to create a genuine issue of fact as to each element of her prima facie case."

[Def. Br. at 16].  Because Jacobs has conceded the existence of a prima facie case, the burden of production passes to Jacobs to articulate a legitimate nondiscriminatory reason for its actions.  To meet this burden, Jacobs has asserted that the decision to promote Star Williams rather than post the position for a competitive applicant process was due to numerous nondiscriminatory factors including the reorganization of the office, which included the elimination of Star Williams's then current Word Processor II job, Star Williams's  prior work with the HR department, her superior work product, and her oral and written communication skills. [Pl. Br. at 19-21; Argraves Aff. ¶ 11, 18; Burnett Aff. ¶ 21]. Because Jacobs has presented a legitimate nondiscriminatory reason for its business decision, the burden shifts back to McCrary to show that Jacobs's articulated reason was not the real reason for its decision, but merely a pretext for discrimination.  *See Lee*, 226 F.3d at 1253 (citing *Alexander v. Fulton Co.*, 207 F.3d 1303 (11th Cir. 2000)).

In the instant case, McCrary has not presented any evidence to establish pretext.  The majority of the evidence McCrary relies on occurred after the filing of her first EEOC charge in September 2003. [Complaint Ex. 1]. Such evidence primarily consists of the comments made by Bobby Argraves and Bill Savoie, and the "PIP" which McCrary received from Gerald Burnett. Even considering this evidence, it cannot show pretext because it is wholly unrelated to the HR generalist position.

McCrary does not claim that she was more highly qualified than Star Williams and she does not present any "comparative" evidence to challenge the application of Jacobs's posting policy.  Without such evidence, the Court is unable to determine whether Jacobs's articulated reason was pretextual.  "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff" *Burdine*, 450 U.S. at 253.  Because McCrary has not presented evidence to support a finding of pretext, her claim is due to be denied.  Accordingly, Jacobs is entitled to summary judgment as to this claim.

## II. Retaliation

McCrary alleges that she suffered three instances of retaliation while employed at Jacobs. The first came on February 24, 2003, when McCrary was allegedly disciplined for complaining about co-worker Cindy Daniels. [Pl. Br. at 4].  The last two events occurred after the filing of McCrary's September 19, 2003, EEOC charge, when Bobby Argraves addressed her by stating "[w]hat's up, trouble?" and co-worker Bill Savoie stated something to the effect that McCrary was "still in slavery." [Pl. Br. at 10; Complaint ¶ 11].  The Court will address each event individually.

### a. McCrary's Complaint Regarding Cindy Daniels

When attempting to establish a prima facie case of retaliation through the use of circumstantial evidence, a plaintiff must show:  (1) that [she] engaged in a

protected activity; (2) that her employer was aware of that activity; (3) that she suffered an adverse employment action and; (4) that there was a causal link between [her] protected activity and the adverse employment action. *Maniccia v. Brown*, 171 F.3d 1364, 1369 (11ᵗʰ Cir. 1999)(citing *Little v. United Techs.*, 103 F.3d 956, 959 (11ᵗʰ Cir. 1997)).  The causal link requirement is to be construed broadly and the Eleventh Circuit Court of Appeals has stated that "a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated." *Id.* at 1460 (quoting *EEOC v. Reichhold Chem. Inc.*, 988 F.2d 1564, 1571-72 (11ᵗʰ Cir. 1993)).

McCrary alleges retaliatory discipline as a result of her complaints about co-worker Cindy Daniels. [Complaint ¶ 8]. The discipline of which McCrary complains occurred on February 24, 2003. [DX 13].  As addressed earlier in this opinion, Title VII requires the filing of an administrative charge with the EEOC within one hundred and eighty days after the occurrence of an alleged unlawful employment practice. *See* 42 U.S.C. § 2000e-5(e)(1).  McCrary was disciplined on February 24, 2003. [DX 13]. Because the discipline occurred approximately two hundred and seventeen days before the filing of McCrary's EEOC charge, the claim is due to be dismissed as untimely.

However, even if the event were found to be timely, McCrary's claim would

remain unsuccessful, because her discipline does not constitute an adverse employment action.  An employee must show a "serious and material change in the terms, conditions, or privileges of employment" to establish an adverse employment action. *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001). McCrary did not suffer any adverse action as a result of this discipline.  She was placed on a one month probationary period but this probationary period never had any tangible adverse effect on her employment.   Accordingly, Jacobs is entitled to summary judgment as to this claim.

### b. Bobby Argraves Comment: "What's up, trouble?"

McCrary alleges that she was retaliated against when Bobby Argraves addressed her by stating "[w]hat's up, trouble?" shortly after she filed her first EEOC charge. [Complaint ¶ 11].  McCrary alleges that this statement constitutes direct evidence of a motive to retaliate. [Pl. Br. at 14].  "[I]n cases of discrimination proven by direct evidence, it is incorrect to rely on the McDonnell Douglas test because, while circumstantial evidence is used to create an inference of discrimination under McDonnell Douglas, no such inference is required in the case of direct evidence." *Taylor v. Runyon*, 175 F.3d 861, 867 n.2 (11th Cir. 1999); *Evans v. McClain of Georgia, Inc.*, 131 F.3d 957, 962 (11th Cir. 1997)(stating "[O]nce a plaintiff produces direct evidence of a discriminatory motive, and the trier of facts accepts this

testimony the ultimate issue of discrimination is proved." (citation and internal quotation omitted)); *Trotter v. Bd. of Trustees of the Univ. of Ala.*, 91 F.3d 1449, 1453 (11th Cir. 1996)(holding "When there is direct evidence that discrimination was a motivating factor in the challenged employment decision, the appropriate analysis is different from that employed in a case where only circumstantial evidence is available."). The defendant's burden when refuting direct evidence of discrimination is one of persuasion and not merely production. *See Hill v. Metropolitan Atlanta Rapid Transit Auth.*, 841 F.2d 1533, 1539 (11th Cir. 1988). Direct evidence is "evidence which, if believed, would prove the existence of a fact [in issue] without inference or presumption." *Early v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990). "Only the most blatant remarks whose intent could be nothing other than to discriminate constitute direct evidence." *Clark v. Coats & Clark, Inc.*, 990 F.2d 1217, 1223 (11th Cir. 1992). Evidence that is subject to more than one interpretation cannot constitute direct evidence. *See Harris v. Shelby County Bd. of Educ.*, 99 F.3d 1078, 1083 n.2 (11th Cir. 1996). Isolated comments unconnected to the employment issues in the case are not direct evidence. *See Jones*, 151 F.3d 1321, 1323 (11th Cir. 1999). After a thorough review of the record, the Court has determined that this comment does not meet the heightened requirements of the direct evidence standard. McCrary alleges that this comment was made on only one occasion and this comment

could be construed as a greeting rather than a "blatant remark whose intent could be nothing other than to discriminate." *See Clark*, 990 F.2d at 1223.

Although the Court has determined that this comment does not constitute direct evidence, it will nonetheless address the comment under the circumstantial evidence test set out in *McDonnell Douglas*.  For purposes of summary judgment only, the Court has determined that: (1) McCrary engaged in a protected activity (filing an EEOC charge); and (2) that Bobby Argraves was aware of this activity.  However, McCrary fails to submit evidence supporting the final two requirements of the prima facie case: (1) that she suffered an adverse employment action and; (2) that there was a causal link between engaging in the protected activity and the adverse action taken against her.  As mentioned above, a plaintiff wishing to demonstrate an adverse employment action must "show a serious and material change in the terms, conditions, or privileges of employment." *Davis*, 245 F.3d at 1239.  McCrary has not demonstrated the existence of any adverse employment actions. Her pay was never decreased; additionally,  she was never suspended or demoted.  The only job that she claims she was "downgraded" to was a job that she herself bid on after taking the advice of Gerald Burnett. [McCrary Depo. at 114, 115].  McCrary was promoted while working for Jacobs (although not always to the positions she desired) and her pay was steadily increased with each promotion.  [DX 7].  Additionally, McCrary has

not established that there was a causal link between any of her protected activities and the alleged action taken against her.  Because McCrary cannot satisfy elements three and four of the prima facie case, her claim is due to be denied.  Accordingly, Jacobs is entitled to summary judgment as to this claim.

### c. Bill Savoie's Comment: "Don't you know you're still in slavery?"

McCrary alleges that she was retaliated against when Bill Savoie asked her "don't you know you're still in slavery?" sometime after the filing of her first EEOC charge. [Pl. Br. at 14].  McCrary's brief is unclear on whether she offers this statement as direct or circumstantial evidence of a retaliatory intent.  This distinction is unnecessary at this juncture as either method would be unsuccessful.

Analyzing this comment as circumstantial proof of a retaliatory intent, elements two and four of the prima facie case are not satisfied.  McCrary has presented no evidence indicating that Bill Savoie was aware of the filing of her EEOC charge.

Additionally, the claim cannot proceed under either a circumstantial or a direct evidence approach because Bill Savoie was not McCrary's supervisor.  As Jacobs pointed out, Bill Savoie "worked in a completely different job, on a different contract, with different supervisors." [Burnett Aff. ¶ 27].  This fact is undisputed by McCrary. *Price Waterhouse v. Hopkins* demonstrated that direct evidence exists when *decision makers* place substantial negative reliance on an illegitimate criterion in reaching

their decision. *Hopkins*, 490 U.S. 228, 277 (1989)(O'Connor, J., concurring); *Berman v. Orkin Exterminating Company*, 160 F.3d 697, 701 (11th Cir. 1999)(recognizing that statements "by a person who played no part in the adverse personnel decision is not direct evidence of discrimination."). McCrary has not alleged, nor has she presented evidence to support a finding that Bill Savoie played a part in any of her alleged adverse employment experiences. Because Bill Savoie did not participate in McCrary's alleged adverse employment decision, his comment cannot be analyzed in the context of a retaliation claim. Because this comment cannot be addressed under this type of claim, the claim is due to be denied. Accordingly, Jacobs is entitled to summary judgment on this claim.

### III. Hostile Work Environment

McCrary contends that she was subjected to a hostile work environment while employed with Jacobs. [Complaint ¶ 23]. Specifically, McCrary identifies three events which allegedly created this environment: (1) Bill Savoie's "slavery" comment; (2) Bobby Argraves "what's up, trouble?" comment and; (3) a comment in which Gerald Burnett referred to the only black employee at the Tullahoma office as a "token." [Complaint ¶ 11; McCrary Depo. at 175, 218].

A hostile work environment claim is established upon proof that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is

sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S. Ct. 367, 370 (1993).  The Eleventh Circuit has repeatedly instructed that a plaintiff wishing to establish a prima facie case for a hostile work environment claim must show: (1) that she is a member of a protected class; (2) that she has been subjected to unwelcome harassment; (3) that the harassment was based on the protected characteristic of the employee, such as race; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment and; (5) a basis for holding the employer liable. *See Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002).

In the instant case, elements one and two of this analysis are easily satisfied; McCrary is an African-American and therefore a member of a protected class, and the events she was exposed to while working at Jacobs were unwelcome, evidenced by the filing of this suit.  However, McCrary fails to satisfy the third element.

For cases involving race, the court must examine the statements and conduct complained of collectively to determine whether they were sufficiently pervasive or severe to constitute racial harassment.  *See Mendoza v. Borden*, 195 F.3d 1238, 1245 (11th Cir. 1998). However, the statements and conduct must be of a racial nature

"before they are considered in determining whether the severe or pervasive requirement is met." *Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 583 (11th Cir. 2000).  "Innocuous statements or conduct, or boorish ones that do not relate to the [race] of the actor or of the offended party,...are not counted." *Id*.  Because the Court finds that the comment made by Bobby Argraves was not related to the race of McCrary or himself, the Court will not consider the comment with regard to the third element of McCrary's hostile work environment claim.

The Court must now turn to the fourth and fifth elements of McCrary's prima facie case. To determine whether harassment was severe and pervasive to alter the terms and conditions of McCrary's employment, the Court considers the following four factors: (1)the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Allen v. Tyson Foods*, 121 F.3d 642, 647 (11th Cir. 1997) (citing and applying *Harris*, 510 U.S. at 23).  The employee must establish not only that she subjectively perceived the environment as hostile, but also that a reasonable person would perceive the environment to be hostile and abusive. *Watkins v. Bowden*, 105 F.3d 1344, 1355-56 (11th Cir. 1997).  The objective severity of harassment should be judged from the perspective of a reasonable person in the employee's position,

considering all the circumstances. *Id*.

After careful consideration of the record, the Court concludes that the comments and conduct alleged by McCrary do not meet the minimum threshold of conduct sufficiently severe or pervasive enough to alter her working conditions.  As to the frequency of the conduct, the two events were the only evidence submitted by McCrary.  It is the opinion of the Court that two isolated events alleged by McCrary are not to be considered "frequent."   The Court does identify with possible humiliation associated with Bill Savoie's "slavery" comment, but this appears to fall more accurately into the category of an offensive utterance.  However, even if the Court were to agree with McCrary on all of the aforementioned analysis, her claim would still fail because she has not presented any evidence with regard to how these comments affected her job performance. Allowing McCrary's hostile environment claim to go forward would be against the longstanding proposition that Title VII is not a federal "civility code." *Onacle v. Sundowner Offshore Serv., Inc.*, 523 U.S. 75 (1998).  Viewing the facts in the light most favorable to McCrary in the totality of the circumstances, the actions complained of by McCrary were not sufficiently severe or pervasive to alter the terms or conditions of her employment. Accordingly, Jacobs is entitled to summary judgment as to this claim.

**IV. Constructive Discharge**

McCrary asserts that she suffered a constructive discharge as a result of the racially hostile environment she was subjected to while employed at Jacobs. [Complaint ¶ 23]. A constructive discharge in violation of Title VII occurs when an employee is compelled to resign because the employer is deliberately subjecting her to exceedingly intolerable and illegal working conditions which are a direct result of the employee's race, color, religion, sex, or national origin. *Jones v. Winn-Dixie Stores, Inc.*, 75 F.Supp.2d 1357 (S.D. Fla. 1999). To prove a case of constructive discharge, an employee must demonstrate that [her] working environment was so intolerable that a reasonable person in [her] position would be compelled to resign. *Kilgore v. Thompson & Brock Mgmt., Inc.*, 93 F.3d 752, 754 (11th Cir. 1996). The Eleventh Circuit has traditionally required a high degree of deterioration in an employee's working conditions, approaching the level of "intolerable." *Wardell v. School Bd. of Palm Beach County, Florida*, 786 F.2d 1554, 1558 (11th Cir. 1986). In establishing intolerable working conditions, the plaintiff must demonstrate the severity or pervasiveness of the harassment. The standard for proving constructive discharge is higher than the standard for proving a hostile work environment claim. *Hipp v. Liberty Nat'l. Life Ins. Co.*, 252 F.3d 1208 (11th Cir. 2001).

To support her claim of constructive discharge, McCrary cites: (1) denial of promotions; (2) unequal pay; (3) racial comments; (4) harassment concerning

27

approved vacations; and (4) harassment concerning her protected activity. [Complaint ¶ 23]. The Court has determined that McCrary has not presented sufficient evidence to establish that Jacobs's alleged conduct was a direct result of her race and, even if she could, the evidence does not support a finding that the working environment in which she was employed was "intolerable." In fact, the record speaks to the opposite. McCrary filed her second EEOC charge on December 22, 2003. [Complaint Ex. 2]. This new charge listed the comments made by Bill Savoie and Bobby Argraves. [Complaint Ex. 2] This new charge also identified the allegations concerning harassment both for participating in the EEO process and regarding her vacation. [Complaint Ex. 2]. Coincidentally, December 22, 2003, was also the date that McCrary was promoted to Key Entry Operator II. [DX 7]. In this new position, McCrary reported to a new supervisor, Liz Kennedy, and received a pay raise from an hourly rate of $9.75 to $11.16. [DX 7]. McCrary remained in this position until her resignation on April 7, 2004, approximately three and one-half months later. [DX 22]. During this period, McCrary reported no new disconcerting incidents. McCrary testified in her deposition that "It was hard for me to, you know, stop working for her. I really enjoyed working for Liz." [McCrary Depo. at 223]. Additionally, in her resignation letter, which gave a two weeks notice of her departure, McCrary stated that "I would like to thank you for having me as a part of your team." [DX 22]. This

28

evidence does not support the objectively intolerable conditions requirement needed to sustain a cause of action for a constructive discharge.  Accordingly, Jacobs is entitled to summary judgment on this claim.

## CONCLUSION

_____For the reasons set forth above, Defendant Jacobs' motion for summary judgement as to Plaintiff McCrary's discrimination, retaliation, hostile work environment, and constructive discharge claims is due to be granted

**DONE** and **ORDERED** this 26th day of January, 2006.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

29